# B. S. YOST v. SCHUYLKILL NAVIGATION CO.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 5, 1889—Decided April 1, 1889.
[To be reported.]

(a) A canal company erected a dam in the Schuylkill river which backed up the water in the river and in a shallow arm thereof which divided parts of the farms of Yost and Gring, situate on the main land from the parts on an island. The act under which the company was incorporated provided for the assessment of damages by a jury in such cases, when the parties could not agree, where lands were flooded by dams and where the construction of the canal itself injured the land.

(b) Section 14 of this act provided that when the canal divides the grounds of any person into two parts so as to require a ford or bridge to cross the same, the jury shall ascertain which method is desirable, and the company " shall cause a ford to be rendered practicable, or a bridge built and forever hereafter maintained and kept in repair " at all places so ascertained by the jury:

(c) G. agreed amicably with the company as to his damages and entered into a written contract with them which provided that whenever a guard-lock should be built at the end of the island to connect the Schuylkill with the Union Canal, G. should deed to the company certain land for the gate-house, etc., and the company should pay G. $40, and "build a bridge forthwith on the line between G. and Y. to enable said G. and Y. to pass and repass from and to the island across the canal."

(d) The land was conveyed, the guard-lock constructed, and bridge built and maintained by the company for many years. In 1850 the gate-house and lock were abandoned and the use of the arm for boats discontinued. In 1869 the bridge was destroyed and the company refused to rebuild it. Y., who had bought G.'s land, meantime, brought suit against the company for damages for its failure to rebuild the bridge :

1. The damage done by the deepening of the water having been paid, after an adjustment by agreement or by legal proceedings, the statutory obligations of the company were fully discharged ; and, as the arm was not a part of the canal, but a temporary expedient only, the company was not required by the statute to maintain a bridge over it, after its use for canal purposes ceased. Moreover, as the contract between G. and the company was merely to build a bridge, and contained no covenant to rebuild or maintain, it constituted no ground for plaintiff's recovery.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 74 July Term 1888, Sup. Ct.; court below, No. 52 April Term 1886, C. P.

On March 17, 1886, Beneville S. Yost issued a summons in case, against the president, etc., of the Schuylkill Navigation Co. to recover damages for the failure of said company to rebuild a certain bridge. The plea was not guilty.

At the trial on April 16, 1888, the following facts appeared:

The company defendant was incorporated by act of March 8, 1815, P. L. 72, with authority to build a canal from the coal regions to Philadelphia. At certain places along the route it erected dams in the Schuylkill river and thus obtained deep enough water without constructing a canal at that point. One of these dams was erected below the city of Reading. Above it lay the farms of Abraham Yost, the ancestor of the plaintiff, and Henry Gring. The farms were upon the west side of the river and contained land upon an island separated from the main land by a narrow channel of water known as Mifflin's

Arm. The building of defendant's dam backed up this water in the main stream and Mifflin's Arm, about six feet.

The act incorporating the company contained the provisions:

"Section 10. If any person or persons shall be injured by means of any dam or dams being erected as hereinafter mentioned, or the land of any person inundated by swelling of the water in consequence of the erecting of any dam or dams, or any mill or other water works injured by swelling the water into the tail race of any mill or other water works, which may have been erected in said river or any stream of water emptying into the same, and if the president, managers, and company cannot agree with the owner or owners thereof, on the compensation to be paid for such injury, the same proceedings shall be had as is provided in the eleventh section of this act; the persons valuing the damages, being first sworn or affirmed, or the jury, as the case may be, shall take into consideration the advantages which may be derived to such owner or owners by the navigation aforesaid."

Section 11 provides for the assessment of damages sustained by the entry upon land for the purpose of erecting lock, sluices, etc., i. e. the construction of the canal itself, and then continues as follows : " But if the parties cannot agree upon the compensation to be made to such owner or owners, it shall and may be lawful for the parties to appoint six suitable and judicious persons, who shall be under oath or affirmation, and who shall reside within the proper county where the land lies, or if they cannot agree on such persons, then either of the parties may apply to the Court of Common Pleas of the proper county where the land lies, and said court shall award a venire directed to the sheriff to summon a jury of disinterested men in order to ascertain and report to said court what damages, if any, have been sustained by the owner or owners of said ground by reason of such lock, canal or sluice passing through his, or their land."

" Section 14. That whenever the said canal shall cross any public or private laid-out road or highway, or shall divide the grounds of any person or persons into two parts so as to require a ford or bridge to cross the same, the jury, who shall inquire of the damages to be sustained in manner directed by the eleventh section of this act, shall find and ascertain whether a

passage across the same shall be admitted or maintained by a ford or bridge, and on such finding the said president, managers and company shall cause a ford to be rendered practicable, or a bridge fit for the passage of carts and wagons to be built, and forever hereafter maintained and kept in repair at all and every place so ascertained by said jury at the costs and charges of said company."

Under these sections, Yost instituted a proceeding to No. 260 April Term 1820, to have damages assessed to him for the injuries resulting from the construction of the dam. A venire was issued, a jury called and damages awarded, from which the defendant company appealed, but a compromise settlement was subsequently made. In 1842 the canal was enlarged, and Nicholas Yost, plaintiff's father, then owner of the land, instituted another proceeding, under said sections of the act to No. 95 April Term 1842, to assess his damages caused by the enlargement. A jury was also summoned in this case and there was awarded to Yost $250, which was paid.

In 1826 Gring compromised with the company and an agreement was executed between them, dated December 25, 1826, which fixed Gring's damages at $110, in consideration of which Gring released and discharged the company from damages of every kind in consequence of the canal or works passing through his land. The agreement then continued:

"And the said Henry Gring doth hereby covenant and bind himself, his heirs, executors and administrators firmly by these presents unto the said president, managers and company of the Schuylkill Navigation Company, that whenever a guard lock may be built by the said company to connect the Schuylkill Navigation Co. with the Union Canal, at the head of Gring island, that he will, when thereto required, execute a deed, free of all incumbrances, to the said president, managers and company of the Schuylkill Navigation Co., conveying one acre of ground, to be laid off from the island tract of the said Henry Gring at the upper end thereof, so as to suit the said company to enable them to erect a toll-house or gate-house and room for a garden; for and in consideration whereof the said president, managers and company of the Schuylkill Navigation Co. promise to pay to the said Henry Gring, his heirs, executors, administrators and assigns the sum of forty dollars

upon such deed as aforesaid being executed, and the said president and managers aforesaid engage to build a bridge forthwith on the line between the said Henry Gring and Nicholas Yost, to enable the said Gring and Yost to pass and repass from and to the island across the canal; and the said Henry Gring hereby binds himself, his heirs, executors, administrators and assigns, at all times hereafter to allow the said Nicholas Yost and his successors to pass said bridge and along the line of the said Henry Gring to and upon the land of the said Nicholas Yost."

The canal referred to in this agreement, was Mifflin's Arm, which was to be used to connect with the Union Canal.

The guard-lock and gate-house were built, and deed made, and for some years Mifflin's Arm was used for the passage of boats, and the company erected a bridge, as agreed, and for many years maintained it. In 1850 Mifflin's Arm ceased to be used for the passage of boats, and in 1869 the bridge was swept away and the company refused to rebuild it. Yost having bought part of the Gring land, so that the eastern end of the bridge would rest on land owned by him, instead of upon the line of the farms, brought this action.

Defendant offered in evidence the record of the proceeding to No. 260 April Term 1820, for the purpose of showing a venire and award of damages, and that the jury in that case did not report in favor of a bridge or ford, and therefore that the statutory conditions under which an obligation arises to keep a bridge in repair do not arise in this case; also to show a general assessment of damages.

Mr. Bland: Objected to, by the plaintiff, as irrelevant and immaterial, for the reason that it does not tend to show that there was not an agreement between the parties for the building and maintenance of a bridge by the navigation company, the statute not making it absolutely necessary that the liability of the company to maintain the bridge should be evidenced by the finding of a jury: the parties may have agreed to it, and that they did agree to it is clearly shown by the fact that the company maintained the bridge for fifty years.

By the court: Objection overruled; exception.[1]

Mr. Bland: Plaintiff makes the additional objection that the act of assembly chartering the defendant, makes an express

Charge of Court below.

distinction between land damages and the matter of bridges; consequently the finding of the jury and the assessment of damages have no bearing on the question whether or not they agreed to maintain and build the bridges.

By the court: Objection overruled; exception.[1]

Defendant also offered in evidence the record of the proceeding to No. 95 April Term 1842, for the same purposes.

Objected to as irrelevant and immaterial.

By the court: Objection overruled; exception.[2]

The plaintiff submitted certain points, which with their answers were as follows:

1. If the jury believe the evidence of the plaintiff in the case, they can infer and find that the defendant, the Schuylkill Navigation Company, undertook and agreed when they constructed their works, to build and maintain a bridge across the arm of the Schuylkill river separating the land of the plaintiff, as prescribed by the fourteenth section of the charter of the defendant; and, if the jury so find from all the evidence in the case, the verdict should be for the plaintiff for the sum of money that it would cost to build and perpetually maintain a bridge across the said arm at the place where the bridge formerly stood.

Answer: This point is answered in the negative.[4]

2. If the jury find in favor of the plaintiff, the measure of damage is the cost of building and maintaining a suitable bridge.

Answer: As there is no evidence to submit to the jury for the purpose of ascertaining these damages, so far as this case goes, this point is answered in the negative.[5]

The defendant asked the court to charge:

1. That under all the evidence in the case, the verdict must be for the defendant.

Answer: This point is affirmed. That relieves the jury from any responsibility of further considering the case. Your verdict will be in favor of the defendant.[6]

The general charge by HAGENMAN, J., was in part as follows:

So this is the remedy pointed out by this act of assembly. First, where the lands are flooded, the tenth section provides

that the damages are to be recovered as provided in the eleventh section; and, secondly, the eleventh section provides for the recovery of damages where a man's property is injured by the construction of the locks or sluices, the construction of the canal itself; and, thirdly, in the fourteenth section, the jury, who pass upon the matter when a man's land is divided by the canal, must report whether a bridge or ford shall be admitted and maintained.

In 1820, by the construction of the dam to which I have referred, there was back-water caused dividing the lands of Mr. Yost. Mr. Yost commenced his proceeding under the eleventh section of this act of assembly. This is a part of the record in that case:

"Case compromised on payment of $750 and costs; said sum to be paid into court in full satisfaction of all damages done to the real estate mentioned in said venire, whether claimed by Abraham Yost, by his heirs, or any other person who would legally be entitled to the same."

And on the record, under date of January 27, 1832, there is a receipt for the money paid into court by James L. Dunn. That was for the injury which this property sustained while owned by Abraham Yost, through whom the plaintiff in this case claims. And that was for all the damages sustained by that property from the backing of the water into Mifflin Run; and the court say to you that there is no provision made in this act of assembly by which Mr. Yost could oblige the canal company to build a bridge from one side to the other. The jury gave him damages for all the injury which he sustained.

In 1842 there was another proceeding. This was instituted by Nicholas Yost against the president, managers and company of the Schuylkill Navigation Company. As you heard during the trial, navigation was begun with small boats, and the boats were enlarged subsequently until they carried larger burdens. I did not have the petition in the proceeding just referred to read to me. There was for some reason or other more back-water in Mifflin Arm, whether from raising the dam or for some other reason, and Mr. Yost was injured. The petition is indorsed, "Petition for the assessment of damages for injury done to the tract of land containing 104 acres, and a certain island in the river Schuylkill, opposite the land of Martin Fritz, con-

Charge of Court below.

taining about four acres, more or less," and charges the destruction of about five acres of said island and tract of land. In connection with this there was offered in evidence the award of the jury assessing the damages at $250, and the receipt of that money by Henry W. Smith, attorney, acknowledging satisfaction of the judgment. You find, therefore, in 1842 an assessment of damages for other injury done to this property.

In 1825 an act of assembly was passed authorizing the Union Canal and the Schuylkill Navigation Company to connect. Up to that time there is no evidence that the Mifflin Arm was ever used by the Schuylkill Navigation Company. Subsequently to the passage of this act such a connection was in contemplation, and Mifflin Arm was afterwards used as a canal. On December 25, 1826, there was an agreement made, which I will read to you: . . . . .

I have stated to you before that whatever damages Nicholas Yost sustained by the backing of the water up into that run were satisfied by this proceeding in 1820. [And, I say to you now, as a matter of law, upon the construction of this agreement, that there was an obligation upon the part of the navigation company to build this bridge at this time; but there is no provision made in this agreement by which they were to keep up and maintain this bridge, or, in case it should be washed away, to rebuild another in the place of it. If these parties contemplated that the navigation company should keep up and maintain a bridge there, the proceeding should have been under the act of assembly, as I have explained to you. Not having done that, then, standing upon the agreement which was made between the parties, the court say to you that they were to construct that first bridge, but they were not bound to rebuild another bridge when that bridge should be washed away.] [3]

Verdict for defendant and judgment thereon; whereupon the plaintiff took this writ, assigning for error:
1, 2. The admission of defendant's offers.[1] [2]
3. The part of the general charge embraced in [ ] [3]
4, 5. The answers to plaintiff's points.[4] [5]
6. The answer to defendant's point.[6]

Arguments.

*Mr. H. W. Bland* (with him *Mr. Wm. H. Livingood*), for the plaintiffs in error:

1. The language of § 14 of the defendants' charter has been construed by the Supreme Court to mean that when lands are divided by a canal, the jury must say which means of communication the land-owner shall have, a ford or a bridge; the company must provide one or the other: Del. & Sch. Canal Navigation v. Mifflin, 1 Y. 430. Charters are construed most strongly against the grantees: Endlich on Interpretation of Statutes, § 55; Auburn etc. Plank Road Co. v. Douglass, 9 N. Y. 444. This is especially true of the grant of the right to build a dam: 1 Waterman on Corp. 491–2; Lee v. Pembroke Iron Co., 57 Me. 481 (2 Am. Rep. 59).

2. The payment of the $750 damages under the proceeding instituted by Abraham Yost, and the building of the bridge, were both the result of an amicable arrangement, as contemplated by § 11 of defendants' charter, and not the result of the finding of a jury. The company could waive the right to have the question of bridge or ford determined by a jury: Matter of Cooper, 93 N. Y. 507; Schuylkill and S. Navigation v. Decker, 2 W. 343; Endlich on Interpretation of Statutes, § 444 and cases cited. Having waived a strict compliance with the statute and erected and maintained the bridge for 42 years, the defendant cannot now allege, to the prejudice of the plaintiff, a non-compliance with the statute: Bidwell v. Pittsburgh, 85 Pa. 417.

*Mr. Jeff. Snyder* (with him *Mr. Geo. F. Baer*), for the defendant in error:

1. Under the provisions of the act, it is clear that the maintenance of a canal bridge is incident to the maintenance of a canal proper, and where there is no canal there need be no bridge. Certainly where the canal is abandoned, and the land owner acquiesces in the abandonment by taking into his possession the land and other property of the canal, there is no legal or equitable reason why a bridge should be maintained for him. But while we deem it clear that this must be the conclusion where parties depend upon their rights as fixed by the statute, we insist that the plaintiff's suit must fail on other grounds.

2. The court below held that the plaintiff's suit could not be maintained because the agreement under which the bridge was built did not provide for more than the construction of the first bridge. The learned judge considered that if it was intended that the defendant company should keep up and maintain a bridge at this point, the proceeding should have been under the act of assembly, or it might have been so provided in the agreement; but because the parties adjusted the matter by agreement and failed to provide for a rebuilding, they must now abide by the terms of the agreement.

3. The land-owner could waive the statutory right to have the question of bridge or ford determined by a jury. " A party may waive a statutory, or even a constitutional provision made for his benefit, and when he does so he will be estopped from afterward claiming a protection under it:" Matter of Cooper, 93 N. Y. 507. And so we might go on citing again the authorities, that when Mr. Yost, the elder, waived his right to have a bridge decreed him by a jury of viewers, and accepted instead a bridge erected in compliance with the terms of the agreement of December 25, 1826, he, and his assigns, must abide by this agreement, and must be held estopped from claiming the protection which he waived.

OPINION, MR. JUSTICE WILLIAMS:

The company defendant was incorporated in 1815, and completed the construction of its canal in 1825. One of the dams constructed by it in the Schuylkill river was located about two miles below the city of Reading. The farms of Nicholas Yost and Henry Gring lay on the west side of the river about midway between the dam and the city. Both farms embraced land extending back from the river, together with land upon an island formed by a narrow channel of the river known as Mifflin's Arm. The main stream flowed on the east side of the island and the towing path of the canal was on the east side of the main stream. The building of the dam raised the water-level along the lands of Yost and Gring in the narrow channel, and in the main stream, to a depth of about six feet. Yost instituted proceedings under the act of incorporation for the purpose of having damages assessed to him for the injury done by the dam, and an award was made from which the company ap-

pealed. The damages were finally fixed by agreement at seven hundred and fifty dollars and paid to Yost. Again in 1842 when the canal was enlarged proceedings were instituted by Yost to have his additional damages assessed, which resulted in an award of two hundred and fifty dollars, which was also paid.

Henry Gring appears to have made an amicable settlement with the company in 1826, by an agreement, in writing, bearing date of December 25, 1826. By the terms of this agreement his damages, by reason of the erection of the dam, were fixed at one hundred and ten dollars. The contract then provided that whenever a guard-lock should be built at the end of the island to connect the Schuylkill with the Union Canal, Gring should make a deed to the navigation company for one acre of land for purposes of a gate-house and garden, and proceeded thus : " In consideration whereof the said president, managers, and company promise to pay to the said Henry Gring, his heirs, executors, administrators, and assigns, the sum of forty dollars upon such deed as aforesaid being executed . . . . . and to build a bridge forthwith on the line between the said Henry Gring and Nicholas Yost to enable the said Gring and Yost to pass and repass from and to the island across the canal." The canal thus referred to is Mifflin's Arm, which it was proposed to use as a means of connection with the Union Canal. The stipulation stands as part of the consideration for the deed of one acre of land at the end of the island, and the use of it for a guard-lock, etc., including doubtless the inconvenience to result from the passage of boats through the Arm.

The guard-lock was built, the deed made, the gate-house erected, and for several years the Arm was used for the passage of boats. The company also erected a bridge in accordance with the agreement, and maintained it for many years. In 1850 the guard-lock and gate-house were abandoned, and Mifflin's Arm ceased to be used for the passage of boats. In 1869 the bridge over the Arm was swept away and the company has since declined to rebuild it. This action is brought by Yost, who has added to his part of the island a few acres purchased from Gring, so that the eastern end of the bridge would be in the field of Yost instead of upon the line of farms.

The plaintiff cannot recover unless he can show that the company is under a statutory obligation to maintain the bridge, or has become bound by contract to do so. But the canal of the defendant does not cross the land of the plaintiff. The temporary use of Mifflin's Arm for the passage of boats as a means of connection with the Union Canal, was discontinued in 1850. The damages done by reason of the deepening of the water have been paid after an adjustment of their amount by agreement or by legal proceedings.

The statutory obligations growing out of the exercise of the right of eminent domain are therefore fully discharged. Mifflin's Arm is not a part of the canal, either in law or fact, and when so used, temporarily, a bridge was constructed over it and maintained for the joint use of Yost and Gring. If we turn to the contract we find that it contains an agreement to build only. There is no covenant to rebuild or to maintain. It would seem that both parties understood the use of Mifflin's Arm was a temporary expedient, not likely to be long continued, and not justifying a covenant to maintain the bridge indefinitely. However that may be, the contract contains no such covenant nor any words from which such covenant can be inferred, except those we have quoted above, " and to build a bridge forthwith on the line between the said Gring and Nicholas Yost, to enable the said Gring and Yost to pass and repass from and to the island across the canal." It is conceded that this was done, and that the bridge was maintained for many years after the use of the Arm was discontinued, the stone work of the guard-lock removed and the gate-house abandoned. This was a compliance with the contract. It was performance according to the letter, and if the contract be regarded in the light thrown on its stipulations by the evidence, it was performance according to the spirit of the agreement. The learned judge of the court below was right in his rulings on the trial and the judgment must therefore be

Affirmed.